**Nona LIZZA and Susan Roddy, Plaintiffs,**

v.

**August Michael LIZZA, Defendants.**

**No. CV 85–2782.**

United States District Court,
E.D. New York.

April 1, 1986.

</div>

Lerner, Gordon & Hirsch, P.C. by Lawrence M. Gordon, Carle Place, N.Y., for plaintiffs.

Berry, Kagan, Privatera & Sahradnik, P.C. by Seymour J. Kagan, Toms River, N.J., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Nona Lizza and Susan Roddy brought this action seeking damages under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, on the basis of defendant August Michael Lizza's placement of a recording device on phone lines in the Lizza's marital residence. Defendant now moves for an order dismissing plaintiffs' complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court orders that the action be dismissed.

### I.

Nona Lizza and August Michael Lizza were married in a civil ceremony on April 13, 1973. On October 4, 1984, both Lizzas filed respective Complaints for Divorce in the Supreme Court of New Jersey, Chancery Division, Family Part, in Ocean County. They each continued to reside in the marital home, however, until March, 1985.

In October 1984, defendant attached an electronic recording device to the residential home phone, allegedly for the purpose of preserving evidence of harassing phone calls. In December 1984, defendant received a letter from the President of Nassau Pennysaver Publications, Inc. ("Pennysaver") indicating that Nona Lizza had conveyed her stock interest in a family corporation to Pennysaver. Defendant thereafter maintained the recording device for the purpose of discovering evidence of a possible conspiracy to transfer his wife's stock interest fraudulently and protecting his interests in an equitable distribution of all marital property in the divorce proceedings.

On June 11, 1985, defendant filed a motion in the New Jersey court to add Pennysaver as a party to the divorce litigation. In support of his motion, defendant filed an affidavit to which he attached a transcript of telephone conversations between Nona Lizza and Pennysaver, specifically Susan Roddy of Pennysaver, which the recording device had taped. Roddy is Nona Lizza's sister-in-law. The New Jersey court allowed the filing of a third party complaint against Pennysaver.

Plaintiffs filed a complaint with this Court on July 25, 1985 seeking damages for defendant's interception of their phone conversations through his attachment of the electronic recording device. Plaintiffs argue that defendant's actions constitute behavior proscribed by Title III and subject defendant to civil liability under § 2520 of the Act. 18 U.S.C. § 2520. Defendant responds that a spouse's placement of a recording device on a phone within a marital home does not fall within the coverage of Title III and therefore plaintiffs' lawsuit must be dismissed.

### II.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 deals with wire interception and interception of oral communications. Title III, in other words, concerns what is commonly referred to as "wiretapping." The provisions of the Act relevant to this lawsuit prohibit, except as otherwise specifically provided in the Act, the interception and disclosure of wire or oral communications, 18 U.S.C. § 2511,[1] bar

---

1. § 2511 provides, in relevant part:

*Interception and disclosure of wire or oral communications prohibited.*
    (1) Except as otherwise specifically provided in this chapter any person who—
        (a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—
    (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or;

the possession of intercepting devices, 18 U.S.C. § 2512,[2] prevent the use as evidence of intercepted wire or oral communications, 18 U.S.C. § 2515,[3] and authorize the recovery of civil damages by persons whose communications are intercepted, disclosed, or used in violation of Title III, 18 U.S.C. § 2520.[4] The question thus becomes

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or

(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. § 2512 provides, in relevant part:

*Manufacture, distribution, possession, and advertising of wire or oral communication intercepting devices prohibited.*

(1) Except as otherwise specifically provided in this chapter, any person who willfully—

(a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications;

(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; or

(c) places in any newspaper, magazine, handbill, or other publication any advertisement of—

(i) any electronic, mechanical, or other device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications; or

(ii) any other electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire or oral communications,

knowing or having reason to know that such advertisement will be sent through the mail or transported in interstate or foreign commerce,

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

3. § 2515 reads:

*Prohibition of use as evidence of intercepted wire or oral communications.*

Whenever any wire or oral communications has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

4. § 2520 states:

*Recovery of civil damages authorized.*

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fees and other litigation costs reasonably incurred.

A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law.

whether a spouse's placing of a recording device on phones within the marital home without the knowledge or consent of the other spouse violates Title III and subjects the spouse who recorded the conversations to civil liability.

The circuits which have considered the applicability of Title III to interspousal wiretaps have split on the issue. In *Pritchard v. Pritchard*, 732 F.2d 372 (4th Cir.1984), the Fourth Circuit held that a wife who intercepted her husband's telephone conversations by attaching a wiretapping device to the family phone was not excepted from civil liability under the Act. The court concluded that "the language of the statute is not susceptible to the engrafting of an interspousal exception." *Id.* at 372. In *United States v. Jones*, 542 F.2d 661 (6th Cir.1976), the Sixth Circuit reversed a district court decision dismissing an indictment under Title III of a husband who intercepted telephone conversations of his estranged wife. The court stated, "If Congress had intended to create another exception to Title III's blanket prohibition of unauthorized wiretaps they would have included a specific exception for interspousal wiretaps in the statute." *Id.* at 671.

The Fifth Circuit, on the other hand, has come to a different conclusion. *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.1974), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974), involved a suit for civil damages under § 2520 brought by a wife against her husband for using electronic equipment to record her conversations on the telephone in the marital home. The *Simpson* court stated, "The naked language of Title III, by virtue of its inclusiveness, reaches this case. However, we are of the opinion that Congress did not intend such a far-reaching result, one extending into areas normally left to states, those of the marital home and domestic conflicts. We reach this decision because Congress has not, in the statute, committee reports, legislative hearings, or reported debates indicated either its positive intent to reach so far or an awareness that it might be

doing so." *Id.* at 805. The court reasoned that, given the severity of the criminal and civil sanctions provided by Title III, plus the "novelty" of a federal remedy for acts between spouses in the marital home, the Act should not be extended to spousal wiretaps absent clear indication of congressional intention to include such intrafamilial activity within the ambit of the Act. *Id.* at 805–06.

The Second Circuit confronted the issue of the applicability of Title III to familial disputes in *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir.1977). While limiting its holding to the facts of the case before it, the court in *Anonymous* leaned toward the *Simpson* perspective on the scope of Title III. *Anonymous* involved a suit brought by a divorced woman against her former husband. The plaintiff alleged that the defendant had intercepted and taped her telephone conversations with their daughter over a two year period preceding their divorce during which the parties were separated and the defendant had custody of their two children. The plaintiff asserted that her ex-husband intended to use the tapes of these conversations in a later custody fight.

The court quoted Professor Herman Schwartz, who, testifying for the American Civil Liberties Union before the House Judiciary Committee, remarked, "'I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem.' Hearings on the Anti-Crime Program Before Subcomm. No. 5 of the House Judiciary Comm., 90th Cong. 1st Sess. 901 (1967)." *Id.* at 679. The court then stated, "[W]e, like Professor Schwartz, assume that 'nobody wants to make it a crime' for a father to listen in on conversations between his wife and his eight year old daughter, from his own phone, in his own home." *Id.* The Court deemed irrelevant the fact that the defendant taped the conversations, rather than merely listening in on them. *Id.*[5]

After giving careful consideration to the differing interpretations of the scope of

---

**5.** Title III exempts from coverage under the Act the ordinary use of an extension phone to listen in on a conversation. *See* 18 U.S.C. § 2510(5)(a)(i); *Anonymous*, 558 F.2d at 678–79.

Title III, this Court concludes that the reading of the statute adopted by the Fifth Circuit in *Simpson* is the sounder one and that the Second Circuit's rationale in *Anonymous* applies equally to the situation currently before the Court. The Act is a far-reaching one which, if read to cover circumstances such as that presented by the instant case, would have serious ramifications as to the degree of federal control over actions by family members within their own homes. Absent a signal, either in the statute itself or in the legislative history, that Congress intended that the Act's criminal and civil proscriptions and liabilities to extend to a decision by a spouse to record conversations on his own residence's telephone, this Court must decline to impute such an intent. The Court fails to see why if, as the Second Circuit observed in *Anonymous*, "nobody wants to make it a crime" for a husband to record conversations between his wife and his daughter, 558 F.2d at 679, a husband's recording of conversations between his wife and a third party should be viewed any differently.[6]

### III.

One final issue must be addressed. Nona Lizza is not the only plaintiff in this action; Susan Roddy also seeks damages from defendant August Michael Lizza. Roddy is not a member of the immediate family nor was she a resident of the marital home at the time that defendant recorded the conversations between Roddy and Nona Lizza. The question therefore becomes whether, even if a suit by a wife for damages allegedly resulting from her spouse's placement of a recording device on the marital residence's telephone lines must be dismissed, a third party to such taped conversations nonetheless has a cause of action.

The Court concludes that a third party is no less barred from suit under Title III than a member of the familial residence. A husband's wiretapping of his own phone falls outside the purview of the Act. Title III does not reach such actions; the specific identity of a plaintiff who seeks to hold a person liable for actions not barred by the Act cannot impose liability where it does not otherwise exist. Whether a plaintiff is a family member who used the telephones in the family home or a third party who had conversations with a person using such telephone lines is irrelevant. As Judge Pollack noted in *London v. London,* 420

---

The Second Circuit had occasion again to consider the applicability of Title III to interspousal wiretaps in *Citron v. Citron,* 722 F.2d 14 (2d Cir.1983). *Citron* involved a wife who, in preparation for a contemplated divorce proceeding and custody battle, used an electronic recording device to intercept and record her husband's telephone conversations. Upon discovering his wife's activity, the husband brought suit seeking civil damages under § 2520. The wife moved to dismiss on the authority of *Anonymous,* but the district court denied her motion and allowed the case to proceed to trial. The wife renewed her motion at the close of plaintiff's evidence and again at the close of the whole case, but the court again denied her motions. The court also initially denied defendant's renewal of her motion upon the return of the jury verdict, but reconsidered its ruling and dismissed the case, ruling that, as defendant had claimed as an additional ground for her motion, she had not acted "willfully" within the meaning of the Act. *Citron v. Citron,* 539 F.Supp. 621 (S.D.N.Y.1982).

On appeal, the Second Circuit affirmed the dismissal, holding that the district court had

correctly perceived that the term "willfully" in § 2511 should have the same meaning whether the statute is applied criminally or invoked to impose civil liability under § 2520. The Court of Appeals did not address whether its decision in *Anonymous* additionally required dismissal of the husband's suit.

**6.** *See London v. London,* 420 F.Supp. 944, 946–47 (S.D.N.Y.1976), *aff'd sub. nom., Anonymous v. Anonymous,* 558 F.2d 677 (2d Cir.1977):

The Court finds no significance in the fact that in *Simpson* the interception and recording took place in the marital home of the parties, whereas here it took place in the husband and children's home from which his wife had departed. What is important is that the *locus in quo* of the interception be a family home which the husband shares with some family member whose conversations are recorded.... There is no apparent reason to distinguish between the interception of telephone calls in a marital home and interception in a parent-progeny home.

F.Supp. 944, 947 (S.D.N.Y.1976), the district court decision affirmed *sub nomine* in *Anonymous,* "Having read the statute as not extending to the interception of calls by family members within the family home, it would be anomalous to conclude that although 18 U.S.C. § 2520 confers no cause of action in favor of the family member, it does confer a claim on the other party to the call."

### IV.

Plaintiffs' complaint is dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Clerk of the Court is hereby directed to enter judgment for defendant, dismissing the complaint.

SO ORDERED.