# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00188-SCT

*SHARON LYNN GOODWIN RUSHING*

*v.*

*TODD RUSSELL RUSHING*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/96 |
| TRIAL JUDGE: | HON. JON M. BARNWELL |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DARNELL FELTON |
| | W. ELLIS PITTMAN |
| | AELICIA L. THOMAS |
| ATTORNEY FOR APPELLEE: | ARNOLD GWIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 12/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

**BEFORE SULLIVAN, P.J., BANKS AND ROBERTS , JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This is an appeal brought by Sharon Rushing seeking reversal of the trial court's decision granting a divorce to Todd Rushing on the ground of adultery and awarding him sole legal and physical custody of the minor child.

### STATEMENT OF THE CASE AND SURROUNDING FACTS

¶2. Sharon Lynn Goodwin and Todd Russell Rushing were married on December 27, 1989. One child was born of the marriage on August 23, 1990. On December 11, 1995, Mrs. Rushing left the marital home, taking the minor child with her.

¶3. On December 20, 1995, Mr. Rushing filed a complaint for divorce on the grounds of adultery, habitual cruel and inhuman treatment, and habitual use of narcotic drugs, or, in the alternative, on the ground of irreconcilable differences. Mr. Rushing further alleged Mrs. Rushing is unfit to have physical custody of the

minor child and requested he be granted physical custody. Mrs. Rushing admitted irreconcilable differences existed between Mr. Rushing and herself, but she denied the allegations of misbehavior and unfitness in her answer dated February 8, 1996.

¶4. On February 23, 1996, the chancellor entered a judgment providing temporary child custody to Mrs. Rushing and child visitation to Mr. Rushing. On May 31, 1996, Mr. Rushing filed a motion to modify the court's temporary order for child visitation. By order entered July 9, 1996, the court awarded Mr. Rushing week long visitations with the minor child during the summer of 1996.

¶5. At the divorce hearing held on August 13 and 14, 1996, Mr. Rushing testified he believed Mrs. Rushing was having an extramarital affair with Mr. Terry Carr. Mr. Rushing testified that he had invited Mrs. Rushing and the minor child to return to the marital home while he was out of town, and that he had installed a voice activated recording device on his home telephone so that he could intercept Mrs. Rushing's phone conversations.

¶6. Mr. Rushing then introduced into evidence an audio tape allegedly containing evidence of Mrs. Rushing's unfaithfulness. Mr. Rushing identified the voices on the tape recording as those of his wife and her alleged lover Mr. Carr. Over Mrs. Rushing's objection, the trial court admitted the tape recording into evidence.

¶7. Thereafter, Mrs. Rushing's counsel made this announcement:

> After the plaintiff rested, I have conferred with my client, Mrs. Rushing, and we concede that the proof on behalf of the plaintiff establishes the grounds for the divorce of adultery, and we concede that. . . the court can award the custody of [the minor child] to Mr. Rushing, subject to the reasonable visitation rights of Mrs. Rushing. . . .

¶8. On August 14, 1996, the court entered a Final Judgment of Divorce, on agreement by both parties, granting Mr. Rushing a divorce on the ground of adultery and granting Mr. Rushing sole legal and physical custody of the minor child. Mrs. Rushing was awarded restricted scheduled visitations with the minor child and ordered to pay child support in the sum of $280.00 per month.

¶9. Mrs. Rushing's Motion for Reconsideration or, In the Alternative, a Motion for a New Trial was denied by the trial court on November 20, 1996. Mrs. Rushing filed her Notice of Appeal to this Court on December 19, 1996, but her appeal was dismissed for failure to timely file Appellant's brief. On October 27, 1997, Mrs. Rushing filed her motion to reinstate the appeal, and this Court entered an order reinstating said appeal on January 28, 1998.

## LEGAL ANALYSIS

## I.

## WHETHER THE TAPE RECORDING OF A CORDLESS PHONE CONVERSATION IS ADMISSIBLE WHEN NONE OF THE PARTIES IN THE CONVERSATION CONSENTED TO THE TAPE RECORDING?

¶10. The first issue Mrs. Rushing raises on appeal is whether the chancellor committed reversible error by admitting into evidence tape recorded phone conversations between Mrs. Rushing and her alleged lover

Mr. Carr which had been intercepted by Mr. Rushing without his wife's consent. Mrs. Rushing bases her argument on three grounds. First, Mrs. Rushing argues that Mr. Rushing's tape recording of her private phone conversations violates Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 ("Title III"). Second, Mrs. Rushing argues that because the tape recording was obtained in contravention of the federal statute, the chancellor erred when he admitted it into evidence. Third, Mrs. Rushing attacks the admissibility of the tape recording claiming it was not properly authenticated.

¶11. The standard by which this Court reviews a trial judge's decision to admit evidence has been articulated as follows: "(The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused.) . . . (Unless the trial judge's discretion is so abused as to be prejudicial to a party, this Court will not reverse his ruling.)" *Stewart v. Stewart*, 645 So.2d 1319, 1320 (Miss. 1994) (quoting *Century 21 Deep S. Properties v. Corson*, 612 So. 2d 359, 369 (Miss. 1992)).

¶12. In *Stewart*, the husband tape recorded his wife's telephone conversations with another woman. The conversations referred to contact that had taken place between the two women. The trial court admitted the tape recording into evidence. The trial court granted custody of the minor child to the husband, and the wife appealed arguing the lower court erred in admitting the tape recorded conversation into evidence.

¶13. We affirmed the lower court's decision granting custody of the minor child to the husband, holding the husband's taping of his wife in the marital home did not violate federal law and was exempted by 18 U.S.C. § 2510(5)(a)(i), the business-use exception to the definition of "electronic, mechanical, or other device." We reasoned that "§ 2515 does not prohibit a person from taping a conversation, within his own home, that he is legally authorized to listen to by picking up an extension phone." *Id.* at 1321.

¶14. In the case *sub judice*, Mr. Rushing installed a recording device on his own telephone. Mrs. Rushing used that telephone to speak with her alleged lover, and Mr. Rushing tape recorded her conversations. Title III does not prohibit Mr. Rushing from tape recording telephone conversations within his own home. Therefore, Mrs. Rushing's claim that Mr. Rushing was required to receive her consent before recording her private telephone conversations pursuant to § 2511(2)(d) is without merit. Also without merit is Mrs. Rushing's claim that her conversations were intercepted in violation of § 2515 and are consequently prohibited from being used as evidence. As this Court has previously stated, Title III's prohibition against wiretapping is simply not applicable to domestic relations cases. *Stewart,* 645 So. 2d at 1321 (Miss. 1994); see also *Anonymous v. Anonymous*, 558 F.2d 677 (2nd Cir. 1977); *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), cert. denied, 419 U.S. 897 (1974).

¶15. Mrs. Rushing also argues the chancellor was in error when he admitted the tape recording into evidence because it was not properly authenticated. First Mrs. Rushing claims the voices on the tape recording were not properly identified. However, Mr. Rushing testified as follows:

BY THE COURT: Did you recognize the voices on that tape?

BY MR. RUSHING: Most definitely my wife and Terry Carr.

BY THE COURT: I know how you would recognize your wife's voice. How would you recognize the voice of Terry Carr.

BY MR RUSHING: I know Terry. I was in the store for three years. Terry was a regular customer at the time.

BY THE COURT: Is he someone that has from time to time talked to you in a normal voice-- in a conversational voice?

BY MR. RUSHING: Yes.

¶16. Mrs. Rushing further claims there is uncertainty as to whether the tape introduced into evidence was in fact the original. This issue was resolved by the lower court. While there was some confusion as to whether the tape admitted was the original or a duplicate, the chancellor listened to both tapes presented to the court and determined they contained identical matter. The chancellor then admitted both tapes into evidence.

## II.

## WHETHER THE ORDER ENTERED BY THE CHANCERY COURT WAS IN FACT AN AGREED ORDER?

¶17. Mrs. Rushing claims she entered an agreement to settle the unresolved issues in this case only after the chancellor incorrectly admitted the tape recording of her conversations into evidence. Mrs. Rushing claims that because she felt compelled to settle the issues of adultery and child custody after the tape recording was admitted into evidence, this somehow means the trial court's judgment "rises to a level of fraud." We disagree.

¶18. Prior to 1991, one could not appeal a consent judgment in chancery court. Statutory law provided "An appeal may be taken to the supreme court. . . from any final decree of the chancery court, *not being by consent*, by any of the parties or legal representatives of such parties. . . ." Mississippi Code Ann. § 11-51-3 (1972) (emphasis added); see also ***Hiatt v. Barker***, 194 So. 2d 495, 495 (Miss. 1967) (holding "an appeal cannot be taken from a consent decree or judgment of a trial court by one of the parties to the consent decree or judgment. . . "). Then, in 1991, Section 11-51-3 was amended to provide:

> An appeal may be taken to the Supreme Court from any final judgment of a circuit or chancery court in a civil case, not being a judgment by default, by any of the parties or legal representatives of such parties. . . .

¶19. While Mississippi law now permits a party to appeal a consent judgment in chancery court, consent agreements are not ordinarily subject to appellate review. The Court's opinion in ***Askew v. Askew***, 699 So. 2d 515 (Miss. 1997) proves insightful.

¶20. In ***Askew***, we considered whether and when M.R.C.P. 60(b) may be used to set aside an agreed judgment in a divorce case concerning custody and support. Rule 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) fraud, misrepresentation, or other misconduct of the adverse party;
>
> . . . .

(6) any other reason justifying relief from the judgment.

¶21. In *Askew*, the husband sought to set aside an agreed judgment of divorce in which he had relinquished physical and legal custody of his minor children to his wife while retaining visitation privileges. The husband filed a motion for relief from the agreed judgment pursuant to M.R.C.P. 60(b), alleging fraud and misrepresentation by the wife. The lower court denied the husband's motion finding there was an agreed judgment between the parties and the motion to set aside was an inappropriate method to come before the court.

¶22. In affirming the lower court's decision, we held the lower court should have entertained the husband's Rule 60(b) motion insofar as it alleged fraud and misrepresentation, but stated it was apparent from the record that the husband really had no evidence to substantiate these claims, and he was simply attempting to relitigate the matters which had been agreed to and settled. In holding that a Rule 60(b) motion should be denied where it is merely an attempt to relitigate, we stated:

> While a motion under Rule 60(b) may lie to attack an agreed judgment of divorce, the allegation and indicated evidence should be such as would convince a court that what is sought is not simply an opportunity to litigate that which is already settled. Here the allegations made were outstanding at the time of the settlement. Having foregone the first opportunity to fully litigate those allegations, [the husband] should not be allowed to reopen based upon the very same allegations.

*Id*. at 520.

¶23. Although Mrs. Rushing did not file a Rule 60(b) motion, she is, in essence, attacking the lower court's judgment claiming admission of the tape recording into evidence somehow "rises to a level of fraud." We can find no evidence of fraud here. As previously stated, the trial court's admission of the tape recording into evidence was proper, and the fact that admission of this evidence caused Mrs. Rushing to feel "compelled" to settle the issues of adultery and child custody in no way supports her claim that the trial court's judgment is somehow fraudulent.

### III.

### WHETHER THE AWARD OF PHYSICAL AND LEGAL CUSTODY OF THE CHILD TO RESPONDENT WAS IN THE BEST INTEREST OF THE CHILD BASED ON THE EVIDENCE?

¶24. "The standard of review in a child custody case is quite limited in that the chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this court to reverse." *Wright v. Stanley*, 700 So. 2d 274, 280 (Miss. 1997) (citing *Williams v. Williams*, 656 So. 2d 325, 330 (Miss. 1995)). The polestar consideration in child custody matters is the best interest of the child, not marital fault. *Moak v. Moak*, 631 So. 2d 196, 198 (Miss. 1994).

¶25. Mrs. Rushing complains the trial court granted sole legal and physical custody of the minor child to Mr. Rushing because it appeared Mrs. Rushing was involved in an adulterous interracial relationship. We disagree. Mrs. Rushing conceded the issue of child custody in open court. Mrs. Rushing then entered an agreed consent judgment granting custody of the minor child to Mr. Rushing subject to the reasonable visitation rights of Mrs. Rushing. We can find no reason, such as fraud, to disturb that which Mrs. Rushing, with the advice of counsel, settled by agreement and consent.

¶26. Mrs. Rushing also complains the chancellor failed to issue specific findings of fact as to why Mr. Rushing is better able to care for the minor child than she, and he failed to refer to the factors enunciated by this Court in *Moak v. Moak*, 631 So. 2d 196 (Miss. 1994), when determining the custody issue. Neither of these arguments has merit. Again, Mrs. Rushing conceded the issue of child custody in open court, and she entered an <u>agreed</u> consent judgment. Therefore, the chancellor was not required to issue specific findings of fact nor was he required to determine the issue of child custody.

¶27. Mrs. Rushing further argues the chancellor committed reversible error when he restricted Mrs. Rushing's visitation rights with the minor child. "The chancellor has broad discretion when determining appropriate visitation and the limitations thereon." *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994) (citations omitted). In determining visitation, the chancellor must continue to "keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child." *Id*.

¶28. In *Dunn v. Dunn*, 609 So. 2d 1277, 1286 (Miss. 1992), the Court stated that evidence must be presented that a particular restriction on visitation is necessary to avoid harm to the child before a chancellor may properly impose the restriction. Otherwise, the chancellor's imposition of a restriction on the non-custodial parent's visitation is manifest error and an abuse of discretion. In *Dunn*, we found the chancellor erred by restricting visitation where no evidence was presented that the child was being harmed or was in any danger because of contact with the non custodial parent's lover. Also, in *Morrow v. Morrow*, 591 So. 2d 829, 833 (Miss. 1991), we stated "[a]n extramarital relationship is not, per se, an adverse circumstance."

¶29. In the case *sub judice*, the chancellor restricted Mrs. Rushing from visiting with the minor child in the company of any man not a member of her family. Mrs. Rushing claims this restriction is not supported by the overwhelming weight of the evidence. We agree. The record simply does not support the chancellor's restriction on Mrs. Rushing's visitation with the minor child. The chancellor was manifestly wrong to restrict Mrs. Rushing's visitation rights in this manner simply because she conceded the issue of her adultery.

**IV.**

**WHETHER THE RESPONDENT SHOULD HAVE BEEN AWARDED A DIVORCE ON THE GROUNDS OF ADULTERY?**

¶30. "[I]n order to grant a divorce on the ground of adultery, adultery must be proven by clear and convincing evidence." *McAdory v. McAdory*, 608 So. 2d 695, 699 (Miss. 1992) (quoting *Dillon v. Dillon*, 498 So.2d 328, 329 (Miss. 1986)). The spouse seeking divorce on the ground of adultery must show both an adulterous inclination and a reasonable opportunity to satisfy that inclination. *Id.* (citations omitted).

¶31. Mrs. Rushing complains that although the record appears to establish an adulterous inclination, there is no evidence of the opportunity to satisfy such inclination. No such evidence is required in this case. Mrs. Rushing conceded her adultery in open court. Therefore, we affirm the chancellor's grant of a divorce on this ground.

**CONCLUSION**

¶32. We affirm the rule that Title III's prohibition against wiretapping is not applicable to domestic relations cases. Hence, Mr. Rushing did not violate Title III by tape recording his wife's telephone conversations without her consent. Furthermore, the record reveals the tape recording was properly authenticated. Therefore, admission of the tape recording into evidence was proper.

¶33. The order entered by the chancery court was, in fact, an agreed order. Mrs. Rushing, with the advice of counsel, agreed to settle the issues of adultery and child custody. There is no evidence in the record of any reason, such as fraud, which would justify setting aside the agreed judgment of divorce. Therefore, the chancellor's award of custody of the minor child to Mr. Rushing is affirmed, as is the chancellor's award of a divorce to Mr. Rushing on the ground of adultery.

¶34. However, the evidence in the record does not support the chancellor's restriction on Mrs. Rushing's visitation rights. Therefore, we deem this restriction void.

¶35. Accordingly, this Court affirms the lower court's decision in all respects except with regard to the restriction placed on Mrs. Rushing's visitation rights.

¶36. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**